In the Matter of the Accounting of William H. Slocum et al., as Surviving Executors of, and Trustees under the Will of Robert F. Austin, Deceased, Respondents.

### Anna B. Austin et al., Appellants.

1. Will — Income. The earnings or interest upon the actual capital and share of a deceased partner in the firm property while the firm business was carried on after his death, under a provision in the partnership articles permitting the business of the firm to be continued until the first day of January next following a partner's death, are income of his estate within the meaning of his will, which, after providing for the conversion of his estate into money and its investment in certain securties, directed that the income of the estate be paid over in designated parts to his widow and for the use and benefit of his son, after deducting the necessary costs and expenses of investing the property and collecting the income.

2. Executors Acting as Trustees — Double Commissions. Executors directed by the will to hold the *corpus* of the estate until the death of the testator's widow and son, and then to pay it over to the legatees specified, and in the meantime to pay the income to the life tenants as they should prove to be entitled thereto under the conditions of the will, are not entitled to an allowance of double commissions as executors and trustees, where there is no direction for a division of the estate into separate funds or trusts, and they have administered the estate rather than a trust fund derived therefrom, and their accounts and duties as executors have not been closed by a judicial accounting, and their duties as trustees begun.

*Matter of Slocum*, 60 App. Div. 438, modified.

(Argued November 12, 1901; decided December 20, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, made April 19, 1901, which reversed in part and modified in part a decree of the Kings County Surrogate's Court judicially settling the accounts of William H. Slocum and John P. Douglass as surviving executors of and trustees under the will of Robert F. Austin, deceased.

The facts, so far as material, are stated in the opinion.

*John A. Straley* and *Thomas M. Rowlette* for appellants. The testator intended the life beneficiaries should have the income of investments only after conversion of the assets into

cash, the investment thereof, and the earning of income thereon. (*Matter of Stanfield*, 135 N. Y. 292; *Williamson* v. *Williamson*, 6 Paige, 298; *Pierce* v. *Chamberlain*, 41 How. Pr. 502; *Foster* v. *Wetmore*, 37 N. Y. S. R. 667; *Matter of Barnes*, 7 App. Div. 14; *Spencer* v. *Spencer*, 38 App. Div. 403; *Clifford* v. *Davis*, 22 Ill. App. 316; *Vickers* v. *Scott*, 3 M. & K. 501; *Cooke* v. *Meeker*, 36 N. Y. 15; *Matter of Hodgman*, 140 N. Y. 421.) The Appellate Division below entirely misapprehended the question at issue, assuming erroneously that the decree of the surrogate was based on the report of the referee who reached the conclusion that these beneficiaries were only entitled to receive the income of the estate commencing and accruing one year after the testator's death. (*Matter of Stanfield*, 135 N. Y. 292; *Cooke* v. *Meeker*, 36 N. Y. 15; *Matter of Barnes*, 7 App. Div. 14; *Thorn* v. *Garner*, 113 N. Y. 202; *Williamson* v. *Williamson*, 6 Paige, 298; *Pierce* v. *Chamberlain*, 41 How. Pr. 501; *Matter of Lynch*, 52 How. Pr. 367; *Powers* v. *Powers*, 16 N. Y. S. R. 770; *Barrow* v. *Barrow*, 29 N. Y. S. R. 240; *Matter of Schermerhorn*, 29 N. Y. S. R. 196.) The conclusion was properly reached that the executors must account for the item of $21,763.07 erroneously distributed by them as income. (*Matter of Underhill*, 117 N. Y. 471.) Double commissions to the same persons, first in the character of executors, and then in that of trustees, are to be awarded only when the law contemplates a several and separable action in each capacity, not at the same, but at different stages of the administration, and they are not to be allowed where the law makes no such separation, but blends the two duties and commingles them without severance. (*Matter of McAlpine* v. *Potter*, 126 N. Y. 285; *Johnson* v. *Lawrence*, 95 N. Y. 154; *Laytin* v. *Davidson*, 95 N. Y. 263; *Matter of Willets*, 112 N. Y. 289; *Everson* v. *Pitney*, 40 N. J. Eq. 543; *Hurlburt* v. *Durant*, 88 N. Y. 122; *Hall* v. *Hall*, 78 N. Y. 538.)

*Richard T. Greene* for respondents. The Appellate Division properly reversed that part of the decree which

declared that the contestants, residuary legatees, were entitled to the income of the estate during the period between the time of the testator's death and the time when the estate was converted into cash and invested in the securities in which the testator directed its permanent investment, such income to be added to and become a part of the principal; and which held that the executors and trustees should account to the residuary legatees for so much of said income as had been paid by them to the life beneficiaries. (1 R. S. 773, 774; *Pray* v. *Hegeman*, 92 N. Y. 508; *Barbour* v. *De Forest*, 95 N. Y. 13; *Tweddell* v. *N. Y. L. Ins. & T. Co.*, 82 Hun, 602; *Greer* v. *Chester*, 62 Hun, 329; *Cochrane* v. *Schell*, 140 N. Y. 516; *Matter of Vedder*, 2 Connoly, 548; *Matter of Sands*, 20 N. Y. S. R. 861; *Matter of Rogers*, 22 App. Div. 429; *Vickers* v. *Scott*, 3 M. & K. 501; *Williamson* v. *Williamson*, 6 Paige, 304.) There was nothing in the will itself or in the circumstances of the case indicative of an intent by testator to deprive his widow, son and son's family of any part of the income, except so much of it as should properly be applicable to the payment of the expenses of administration. (*Matter of Stanfield*, 135 N. Y. 292; *Pierce* v. *Chamberlain*, 41 How. Pr. 501; *Pittman* v. *Johnson*, 16 Abb. [N. C.] 478.) The trustees should not have been held personally liable for an unexpected shrinkage in the *corpus* of the estate not due to their own fault or negligence. (*Thompson* v. *Brown*, 4 Johns. Ch. 619; *Richter* v. *Poppenhusen*, 57 Barb. 312; *Tate* v. *Norton*, 94 U. S. 794.) The executors are entitled to three full sets of commissions. (*Fischer* v. *Fischer*, 1 Bradf. 337; *Matter of Mason*, 98 N. Y. 535; *Blake* v. *Blake*, 30 Hun, 469; *Matter of Washbon*, 38 N. Y. S. R. 622; *Matter of Garth*, 10 App. Div. 100; *Matter of Curtiss*, 9 App. Div. 285; *Matter of Emerson*, 59 Hun, 247; *Laytin* v. *Davidson*, 95 N. Y. 263; *Phœnix* v. *Livingston*, 101 N. Y. 451; *Matter of Willets*, 112 N. Y. 289.)

LANDON, J. Robert F. Austin died March 31, 1885, leaving him surviving his widow, Anna S., and an only son,

Daniel W. His estate consisted principally of his interest in the grocery firm of Austin, Nichols & Co. This interest, January 31, immediately preceding his death, had a value on the books of the firm of $306,000. On January 1, following his death, his executors adjusted it with the surviving partners at $222,286.78, which they subsequently realized. In this sum was $21,763.07, which the surviving partners allowed and paid to the executors upon the testator's interest in the firm, as the earnings or interest upon his actual capital and share in the firm property after his death, while the firm business was still carried on. The partnership articles permitted the busi- ness of the firm to be continued until January 1 following a partner's death, if the executors and surviving partners should consent, and this they did. One question upon this appeal is whether this amount of earnings or interest is part of the *corpus* of the estate, and thus distributable under the testa- tor's will to the remaindermen, or was income and thus dis- tributable to the life tenants. The surrogate held that it was *corpus ;* the Appellate Division held that it was income.

Daniel W., the son of the testator, died October 2, 1894, leaving him surviving his widow and five children, parties to this proceeding, and entitled to the *corpus* of the fund. The testator's widow survived Daniel, the son, and died March 14, 1898. The executors paid a considerable part of the $21,763 to the widow and son, assuming it to be of the income pay- able to them under the will. If it was *corpus* they must pay it again to the son's widow and his children.

The will provides:

"*First.* I give, bequeath and devise unto my executors hereinafter named * * * all of my property, real and per- sonal, of every name, nature and kind, of which I shall die seized or which I may have or own at the time of my decease, for the following uses and purposes, and to be held and dis- posed of by them as follows, viz. :

"I direct and require them to sell and convey the real estate and convert all of said property, real and personal, into money as soon as it can conveniently be done without preju-

dice or injury to the estate, and after paying my debts and
such necessary expenses as are properly payable therefrom, to
invest the same in bonds and mortgages on improved farm-
ing lands in any of the States of the United States in which
slavery did not exist on the first day of January, A. D. 1861,
at a legal rate of interest not less than six per cent. per annum,
or in the bonds of any of said States or in the bonds of the
Government of the United States.   *   *   *

"*Second.* The income of my said estate, after deducting
the necessary costs and expenses of investing the property
and collecting the income is to be, and I will and direct that
the same be paid out and disposed of as follows, viz.: Two-
thirds thereof is to be annually retained by or paid over to
my beloved wife Anna Schuyler Austin during her lifetime,
and is to belong absolutely to her.

"The remaining one-third I direct and require my said
executors to pay out for the necessary use and expenses of the
family of my beloved son Daniel W. Austin, including him-
self, in such sums for rent, food, clothing, family supplies and
expenses as may be necessary for the support of himself and
family."

The third and fourth paragraphs of the will provide that if
the testator's widow should die before the son the whole
income should go to him and his family during his life; if he
should die first, then upon the testator's widow's death to his
widow and children, if any, share and share alike; and upon
the death of both, the whole estate to be given to the son's
widow and children in equal shares, any child dying, his chil-
dren to take his share, and in case of the death of the testa-
tor's son without descendants, remainder over to other parties
described.

The contention of the remaindermen is that the income
which the testator disposed of to his widow and son was that
income only which accrued upon the investments made by the
executors after they had converted the grocery stock into
money and invested it as the will provided; or only that
income which accrued after one year from the death of the

testator.    No charge is made that the executors were dilatory
in making investments after they realized upon the testator's
interest in the firm.    The executors contend that the $21,763
was income from the investment made by the testator him-
self, and that it was payable as income under the will.

We concur in this view.    It is true that the testator first
provided for the conversion of his estate into money and then
its investment in the securities he mentioned so that it would
produce income.    But he knew that he had himself invested
the greater part of it in the business of his firm, under articles
which provided that if he should die during the existence of
the partnership it should, with the consent of his executors
and surviving partners, be continued in the firm business until
the January following his death, and thus until then in all
probability, and as the event proved, be productive of income.
He must in making the disposition of the income have con-
templated this situation and these two successive sources of
income.    In the second place the testator directs that " the
income of my said estate " shall " be paid out and disposed
of " in designated parts to his widow for her life and for the
use and benefit of his son and son's family, until the decease
of both widow and son, less, however, " the necessary costs
and expenses of investing the property and collecting the
income."    The expression of this deduction excludes every
other not necessary to be made, excepting commissions, and
certainly permits none for the purpose of augmenting the
*corpus*.    He does not distinguish between the income to be
derived from his investment in his firm and the income to be
derived from the investments to be made by his executors,
although, as we have seen, he must have had both in mind.
The word " income " is used as a whole and of course embraces
all its parts.    He fixes no time and implies none, except as he
lets the law speak for him, when this income shall begin to
accrue, and thus creates no interval between his death and
some future period in which it may not accrue, or, if accruing,
shall not be disposed of as such.    He bestows it upon his
" beloved wife," and for the use and expenses of his " beloved

son" and his family.   We may not infer that he contemplated an interval of starvation or destitution for these beloved objects of his bounty.   Thus, we think, the will construed within its words, and this construction, aided and confirmed by the situation of the testator's estate and the objects of his bounty, makes the $21,763 in question a part of the income therein bequeathed.   The authorities support this construction.   This is so clearly shown by the learned Appellate Division that we adopt their opinion in this respect.   We need not, therefore, decide upon the further contention of the executors, that if the $21,763 in question is by the will to be added to the *corpus* to be ultimately divided among the remaindermen without regard to their minority or its termination, an unauthorized accumulation of income is directed, since, being income, it was not to be accumulated but distributed as it accrued.

A second question is made respecting the allowance of double commissions, namely, one allowance to the executors as such, and another allowance to the same persons as trustees. The surrogate denied the double allowance; the Appellate Division allowed it.

We think the surrogate was right.   There was no distinct separation in the will of the duties of executors from those of trustees. . They were to hold the *corpus* of the estate until the death of both his widow and son, and then pay and distribute it to the legatees, who should be identified by the description, contingencies and conditions specified in the will, now known· to be the widow and children of the son, meantime to pay the income to the life tenants as they should prove to be entitled thereto under the conditions of the will.   There was no direction for a division of the estate into separate funds or trusts. The main purpose of the trust powers given to the executors was to enable them conveniently, wisely and safely to place the estate upon an income-bearing basis, and so administer it that both principal and income should be distributed according to the testator's directions.

The executors have administered the estate rather than a

trust fund derived from the estate. Moreover, they never had any judicial settlement of their accounts as executors, and thus they never formally closed their accounts and duties as such and opened and began them as trustees. This is their first judicial accounting and covers their entire service. Thus we have their practical construction of the situation. The authorities, we think, do not sanction double commissions in such a case. (*Matter of McAlpine* v. *Potter*, 126 N. Y. 285; *Johnson* v. *Lawrence*, 95 N. Y. 154; *Laytin* v. *Davidson*, 95 N. Y. 263; *Matter of Willets*, 112 N. Y. 289; *Everson* v. *Pitney*, 40 N. J. Eq. 543; *Hurlburt* v. *Durant*, 88 N. Y. 122.)

The order of the Appellate Division should be affirmed, except as to the commissions, and in that respect reversed, the account as to income and commissions to be restated by the surrogate in accordance with this opinion. Both parties to have costs out of the fund.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur.

Ordered accordingly.