claims that are withheld during the lifetime of the alleged debtor, and presented after the party alleged to be liable is no longer capable of disputing the claim, to disallow the claim unless it is established by the most clear and convincing evidence.    85 N. Y. 139.; 17 N. Y. Supp. 723; 140 N. Y. 633; 75 Hun, 4; 85 id. 487; 91 id. 89; 1 App. Div. 184; 20 id. 121; 28 Misc. Rep. 338.

The indorsement, having been made after the note had outlawed, and at a time when, if true, it would inure to the benefit of the claimant, is not competent evidence to show such alleged payment unless the indorsement was in the hand-writing of the testator, or shown to have been made with the privity of the said testator.    Roseboom v. Billington, 17 Johns. 182; Mills v. Davis, 113 N. Y. 243.

If I am right in my conclusion that such indorsement is not in the testator's handwriting, then it furnishes no evi-dence of a payment to take the claim out of the Statute of Limitations, as there is no evidence whatever of a payment having been made upon the note, aside from the alleged indorsement.

It follows, from the foregoing conclusions, that the claim is not a valid claim against this estate, and is, therefore, disallowed.

Findings may be prepared in accordance herewith.

All questions in regard to costs are reserved until entry of the decree settling the accounts herein.

Decreed accordingly.

---

Matter of the Judicial Settlement of the Accounts of the Executor of the Will of WILLIAM STANTON, Deceased.

(Surrogate's Court, Rensselaer County, July, 1903.)

Administration — Delay — Expenses of useless litigations — Interest on trust funds mingled and used.

The conduct of an executor who delays the settlement and distribution of an uncomplicated estate for nine years, and keeps no accounts of it, is to be condemned severely.

An executor who as such engages in unnecessary and fruitless litigation cannot be allowed the expense.

The court charged an executor, who had mingled the estate funds with his own, but had apparently been honest, with only four per cent. interest, with annual rests, upon small balances in his hands.

PROCEEDINGS upon the settlement of the accounts of an executor.

Frank E. McDuffee, for executor.

S. Edgar Reynolds, for Camile G. Mooney, guardian of Stanton G. Mooney, an infant.

M. A. Tierney, for William A. Sherman, general guardian of Stanton Sherman, an infant.

HEATON, S.    On the 17th day of April, 1902, William A. Sherman, general guardian of Stanton Sherman, an infant residuary legatee named in the will of William Stanton, deceased, filed a petition, asking that John S. Barry, as executor of the will of said William Stanton, be cited to show cause why he should not pay the legacy due said infant and render an account of his proceedings. Thereafter such proceedings were had that said executor filed his account for judicial settlement, and a citation was issued to all proper parties to attend such settlement. Objections were filed on behalf of two infant residuary legatees, and such objections have been tried.

William Stanton died in December, 1893, and his will was probated March 9, 1894, when letters testamentary were issued to John S. Barry, executor therein named. The estate consisted of a farm, of which the executor was given power of sale; a few hundred dollars in bank, and about $1,200 worth of stock, implements, etc., and yet, after nearly ten years had elapsed, the two infant residuary legatees had to force an accounting from the executor. So long a delay in the settlement and distribution of an estate left by a tes-

tator, free from complications, calls for the unqualified disapproval of the surrogate.

The account when filed showed total receipts of $4,417.02, nearly all of which was received within six months of the appointment of the executor, and yet the account shows a charge of only $17.45 for interest received.   From the oral examination of the executor, it appears that he did not keep, or at least was not able to produce, any written account for his receipts and disbursements on account of the estate, and further, that he kept no separate bank account of the funds of the estate, but mingled them with his own.   While Mr. Barry may have accounted for every cent of the estate money that he received, yet his failure to keep an accurate book-account and a special bank deposit has made it difficult for him to fully explain, after the lapse of so many years, all of his transactions in detail.   Executors must never forget that their acts are subject to the closest and most rigid examination, and that the only way to avoid the suspicion of dishonesty is to be able to show at any time each and every transaction accurately.

Three principal objections are urged against the account. First, that a judgment of $893.36 in favor of Eli Button against deceased, set out in the account as being paid by the executor May 11, 1894, was not in fact paid by him, but purchased for a less amount.   When examined as to this item, the executor claimed there was not sufficient moneys of the estate on hand on May 11, 1894, to pay this judgment, and that he purchased it with his own money, and that he had received interest on it up to the year 1898, when there was sufficient estate money to discharge it.   His account does not show that he paid himself interest, and it does show that there was sufficient funds in his hands May 11, 1894, to pay such judgment.   The testimony shows that he did, from some source, pay Button the whole amount of the judgment.   The contradiction by the executor of his own account emphasizes the need of correct books of account of all such transactions. The executor is allowed credit for the payment on May 11, 1894.

Second, objection is made to various items of disbursements on account of the line fence and the suit of Agan for a deed, aggregating about $400, on the grounds that such expenses were improperly incurred.

The disbursements were of two classes: *First,* for material and labor in building a line fence, for surveying the line and for the judgment costs obtained against the executor by Mrs. File in his unsuccessful suit against her to recover such expense; and, *second,* the expenses of defending the suit brought by Agan to compel the delivery of a deed and the discharge of the executor's personal mortgage.

As to the fence expenses, Mr. Barry claims that he agreed with Mr. Agan, when the latter purchased the farm, to run the line and build the fence. There seems to have been a dispute about the line, and it was certainly very poor judgment for an executor, if he had no personal interest in the matter, to bind his estate to settle a disputed line and build a fence on property which it was his sole duty to sell for what it would bring. The contract with Agan does not require the executor to survey the line or build the fence. Mr. Barry says he did not consider it necessary to put such little matters in the contract. The trouble with the executor's administration of this estate is that he has been careless in regard to small matters. After surveying and building the fence, the executor attempted, in the courts, to recover part of such expense from the adjoining owner, Mrs. File, in both of which actions he was beaten, with costs. It would seem that the executor incurred all these expenses without good reason, and credit for such disbursements is disallowed.

As to the expenses incurred in the suit brought by the purchaser for a deed and the discharge of Barry's individual mortgage, much testimony has been taken, and the case itself has been taken by Mr. Barry to the Court of Appeals, he having been defeated in each court. The case is reported in 66 App. Div. 101. Mr. Barry claims that he refused to execute and deliver the deed asked for by Mr. Agan on advice of able counsel. Surrogate Lansing, in this court (Matter of Huntley, 13 Misc. Rep. 375), has well stated the

Surrogate's Court, Rensselaer County, July, 1903.   [Vol. 41.

rule to be that those actual and necessary expenses for which an executor must be reimbursed are those which are contracted in good faith and with reasonable judgment, whether with or without the advice of counsel. Three courts have passed upon the question at issue, and each has held that the executor should have executed and delivered a deed in accordance with his contract. It appears that there was a dispute about the location of the File line, on one side, and the Barry line, on the other, in which dispute the executor was necessarily personally interested. If Mr. Agan was willing to accept a deed which did not settle those disputes, it was manifestly not for the interest of the Stanton estate to carry on a litigation to settle them. The executor having refused to perform his plain contract should not be allowed the expenses incurred in this fruitless litigation, and such disbursements are, therefore, disallowed.

The item of fifty-one dollars expenses of procuring the discharge of the old mortgage upon the farm is allowed, as a clear title was evidently within the contemplation of the agreement.

*Third.* It is claimed that the account should be surcharged with interest at six per cent. on money of the estate remaining in the hands of the executor uninvested and mingled with his own money, as he concedes it was. Such neglect on the part of the executor justifies a charge against him of six per cent. interest with annual rests. Matter of Myers, 131 N. Y. 409.

The executor claims that, almost immediately after his appointment, he set aside money to pay the legacies, but they are not entered in his account as being paid until nearly a year after, and one of them not until about eighteen months after. He gives this as a reason why he bought, instead of paid, the Button judgment. The Button judgment is a preferred claim (Code Civ. Pro., § 2719), and legacies are not payable until the end of a year (Code Civ. Pro., § 2721).

The executor has already been given credit for having paid the Button judgment on May 11, 1894, and may have credit for paying the legacies and debts at the dates stated in

his account. He may also be charged with interest at six per cent. on the balance due from Agan, until the same was paid.

It would not be proper to overlook the fact that the money of the estate in his hands was not put in bank in a special deposit, but was during all these nine years mingled with the funds of the executor. Too many executors and administrators pursue such a course, and when such a case is brought to the attention of the court it must meet with prompt condemnation. But, as nearly all of the balance of the estate has been actually paid out by the executor, although many of such payments have not been allowed on this accounting, and, as it appears that Mr. Barry has acted honestly and in good faith, his account may be surcharged with interest upon such sums as have remained in his hands at the rate of four per cent. with annual rests.

Decreed accordingly.