---

### In re MARTIN et al.

(Supreme Court, Appellate Division, First Department.   March 13, 1908.)

**1. EXECUTORS—COMPENSATION—COMMISSIONS AS EXECUTORS AND TRUSTEES.**

Where testatrix gave all her property to her executors and trustees, with directions to set apart a fund for her unmarried daughters, to set aside a share for a son for life with gift over on his death, and to keep the residue invested for the benefit of other children not longer than a specified time, paying the income to the children meanwhile, and at the end of the period to distribute the estate, the executors and trustees setting apart the fund and share were entitled to double compensation thereon, but as to the residue they were entitled only to commissions as executors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 2089.]

**2. SAME.**

Testatrix gave all her property to her executors and trustees, with directions to set apart a fund for the benefit of her unmarried daughters, to set aside a share for the benefit of a son for life with gift over on his death, and to invest the balance for the benefit of other children, not exceeding 10 years, and then to distribute the estate. The executors set apart the fund for the unmarried daughters, but the trust fund for the son was not separated and set apart until the distribution of the estate,

on the eve of the accounting, so that until that time the whole estate, excepting the fund for the benefit of the unmarried daughters, was held by the executors as executors. *Held*, that the executors were entitled only to commissions as executors on principal and income as one fund, each executor being entitled to full commission as authorized by Code Civ. Proc. § 2730, and section 3320, as amended by Laws 1904, p. 1921, c. 755, relating to compensation of trustees, was not applicable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 2089.]

3. SAME—PREPARATION OF FINAL ACCOUNT.

Under the express provisions of Code Civ. Proc. § 2562, the Surrogate's Court may in a proper case allow executors $10 a day for the time consumed in preparing a final account.

Appeal from Surrogate's Court, New York County.

Proceedings for settlement of the accounts of Katharine T. Martin and another, executrix and executor of Mary J. Martin, deceased. From a part of the decree of the Surrogate's Court, certain of the parties in interest appeal. Modified.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles De H. Brower, for appellant.
Hubert E. Rogers, for respondents.

SCOTT, J. This is an appeal from a part of a decree of one of the surrogates settling the accounts of the executrix and executor of the will of Mary J. Martin, deceased. The appellants seek to review so much of the decree as gives double commissions to the executors, and also object to the amount allowed for receiving and paying out income, and to an additional allowance under section 2562, Code Civ. Proc.

Mary J. Martin died on July 26, 1896. By her will she appointed the respondents her "executors and trustees." After providing for the payment of her debts and funeral expenses she gave, devised, and bequeathed "all her property real, personal, and mixed unto my said executors and trustees upon the following trusts." Then followed three subdivisions. In the first subdivision she expressed the wish that her unmarried daughters and her son should live in one household, and to that end directed her executors and trustees to keep up the home that she was living in at her death, paying taxes, assessments, insurance, and repairs during the lives of the two youngest daughters who might survive her, or during such less time as any of her unmarried daughters choose to live there, and she provided for setting apart a fund, the income from which was to be used to keep up the house. It was also provided alternatively that if her unmarried daughters should choose to live elsewhere, the house should fall into the residuary estate, and a fund of $50,000 was provided to acquire and keep up another house for the use of said unmarried daughters. The second subdivision provided as follows:

"I direct my said executors and trustees as soon as practicable after the date of my death to set apart out of my estate a share thereof for the benefit of my son John C. Martin, which said share shall be the proportionate part

which he would receive of my estate in view of the number of children who may survive me, and of my children who may have died before me leaving lawful issue me surviving."

This share is to be held in trust for the benefit of John C. Martin during his lifetime, and at his death to be divided among his unmarried sisters. The third subdivision runs as follows:

"As to all the rest, residue and remainder of my estate real, personal and mixed I direct my said executors and trustees to keep the same safely invested during the lives of the two youngest daughters, who may survive me, but not beyond the period of ten years after the date of my death."

The net income was to be paid in equal shares to the children of the testatrix, except her son John, and at the end of the 10 years the whole trust estate was to be divided between said children except John. It appears that the house owned by the testatrix at the time of her death and referred to in above subdivision numbered one was sold in June, 1902, and that the respondents thereupon set apart out of the proceeds the trust fund of $50,000 provided for in said subdivision, and it is not suggested that they are not entitled to double commissions upon that fund. No separation of the estate, other than the setting apart of said fund of $50,000 in 1902, was ever made until July 6th, 10 years after the death of the testatrix, when the estate was distributed. The principal was distributed to the different legatees on that date, one seventh being paid to the respondents as trustees for John C. Martin, the balance being paid over to the legatees named in the will, but prior to that date no separation of the corpus of the estate was made for the purpose of setting apart one-seventh for the benefit of John C. Martin. The respondents never accounted as executors, either by way of a formal accounting in the Surrogate's Court, or by a statement in their own books of their accounts as executors, and a determination of the amount held by them as trustees. The only act they ever did to indicate that they considered that their duties and functions as executors had ended, and those of trustees had begun, was that some time in the year 1901 the title of their bank account was changed from "Alrick H. Man and Katharine T. Martin, as executors" to "Alrick H. Man and Catharine T. Martin, as trustees." No new set of books was opened, and no change in the existing books was made showing the transfer of the estate to the respondents as trustees, and no transfer of stocks, or bonds, or mortgages of any kind was made. The will under consideration, in so far as it concerns that portion of the estate provided in the third subdivision of the second clause does not differ in any essential particular from that discussed in McAlpine v. Potter, 126 N. Y. 285, 27 N. E. 475, wherein double commissions were denied to the executors. In the opening clause of that will the testator gave, devised, and bequeathed to his trustees, as he termed them, all of his real and personal estate, in trust for the uses and purposes mentioned in the will, and directed them to retain the estate entire and undivided until and except as thereinafter directed. The will directed the payment of an annuity to a person named for life, and the payment of one-sixth of the net annual income to each of six

beneficiaries during his or her life, the annuities however to cease upon the death of the survivor of two persons named. Upon the death of the testator's last surviving child, or of the survivor of the two named persons, the executors were directed to close and distribute the estate. There followed a clause specifically giving and bequeathing all of the estate to the trustees to have and to hold the same in trust for the uses and purposes in the will expressed. In the present case the testatrix gives her estate to her executors and trustees "upon the following trusts." She then provides for the creation of a trust fund for the purpose of a home for her unmarried daughters, and another trust fund for the benefit of her son. As to the residue, the executors are directed to keep it safely invested for the lives of the two youngest daughters, but not longer than 10 years, paying the income to the daughters meanwhile, and at the end of the period distributing the estate. · The parallel between the two wills is very close, and what was said by the Court of Appeals in the case cited is equally applicable to this:

"To the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run on together. It is the duty of the executor as such to pay to a legatee the amount of the legacy in the manner and at the time provided by the testator, and it does not change that duty that the payment of the principal is postponed, and the income made payable annually in the meantime. A trust duty may thus be imposed upon an executor which thereby becomes and is made a function of his office. A will must go further than that to admit of double commissions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and require him thereupon to constitute and set up one or more several trusts to be held and managed as such for the benefit of the beneficiary. * * * An examination of the cases in which double commissions have been allowed will show that they were exceptional in their nature, and contained provisions distinctly and definitely pointing to a holding by trustees as such after the duties of the executors were completed and ended. This is not such a case, and double commissions were properly withheld."

In the Matter of Slocum, 169 N. Y. 153, 62 N. E. 130, the Court of Appeals said:

"There was no distinct separation in the will of the duties of executors from those of trustees. They were to hold the corpus of the estate until the death of both his widow and son, and then pay and distribute it to the legatees, who should be identified by the description, contingencies, and conditions specified in the will, now known to be the widow and children of the son, meantime to pay the income to the life tenants, as they should prove to be entitled thereto under the conditions of the will. There was no direction for a division of the estate into separate funds or trusts. The main purpose of the trust powers given to the executors was to enable them conveniently, wisely, and safely to place the estate upon an income bearing basis, and so administer it that both principal and income should be distributed according to the testator's directions. The executors have administered the estate, rather than a trust fund derived from the estate. Moreover, they never had any judicial settlement of their accounts as executors, and thus they never formally closed their accounts and duties as such, and opened and begun them as trustees. This is their first judicial accounting and covers their entire service. Thus we have their practical construction of the situation. The authorities, we think, do not sanction double commissions in such a case."

Olcott v. Baldwin, 190 N. Y. 99, 82 N. E. 748, is not to the contrary, for it is expressly pointed out in the opinion that the will then

under consideration differed radically from the will considered in McAlpine v. Potter and Matter of Slocum, supra. Applying the principle above declared to the will in the present case it will be found that two trusts are distinctly provided for. One in a fund of $50,000 to provide a home for the unmarried daughters, and one consisting of one-seventh of the residuary estate for the benefit of the son. These have both been set up, and upon them the respondents are entitled to double commissions. As to the six-sevenths of the residue required to be kept intact for not more than ten years, and then distributed, the rule of McAlpine v. Potter, supra, applies, and the respondents are entitled only to commissions as executors.

The second objection to the decree relates to the allowance to the respondents of the commission paid to them on the income received and paid over. The estate amounted to considerably more than $100,000 exclusive of the trust fund of $50,000 intended to provide a home for the unmarried daughters. The trust fund for the son was not separated and set apart until the distribution of the estate on the eve of the accounting, so that, until that time, the whole estate except the $50,000 fund was held by the respondents as executors. They are therefore entitled only to commissions as executors, and section 3320 of the Code of Civil Procedure as amended by chapter 755, p. 1921, Laws of 1904, has no application. Their commissions should be estimated upon principal and income as one fund, each executor being entitled to full commission. Section 2730, Code Civ. Proc. The allowance to the executors at the rate of $10 per day for the time consumed in preparing the account was allowable under section 2562, Code Civ. Proc., and the evidence before the surrogate justified the allowance of the sum awarded by him. It follows that the decree must be modified in accordance with the views herein expressed, with costs and disbursements to the appellant payable out of the estate. The order must be settled on notice. If the parties are able to agree upon a recomputation of commissions the order will modify the decree accordingly. If not, the matter must be remitted to the Surrogate's Court for recomputation and modification. All concur.