In the Matter of the Estate of FLORENCE FLETCHER JACKSON, Deceased.

Surrogate's Court, Kings County, October 15, 1930.

*Brower, Brower & Brower* [*Allen S. Wrenn* of counsel], for the executor and trustee.

*Albert Hutton*, special guardian for Robert H. Jackson, an infant.

WINGATE, S. In this case the accountant seeks a determination that, under the terms of the will, the testator contemplated that it should act in a dual capacity, namely, both as executor and as trustee, and that, as a result, it is entitled to commissions in both capacities.

This question is one which is raised in a very large proportion of cases of executorial accounting and is a matter of serious import to the estates of decedents. There is, of course, no question respecting the right of the person administering an estate to commissions on all income received and paid out by him. The sole problem is whether, when the same person acts throughout the entire period, from the death of the decedent to the final distribution of all sums in the estate to the ultimate persons entitled in possession by the provisions of the decedent's will, he should be allowed to divert from the objects of testator's bounty ten per cent of the first $2,000 principal, five per cent of the next $20,000, three per cent of the next $28,000, and four per cent of all sums beyond, or whether, under such circumstances, one-half of these rates is all he should be paid.

The aggregate of such additional commissions, if properly allow-

able, will inevitably total a stupendous figure. The total value of all property in the county amounts to many billions; that in the State represents approximately a quarter of the entire wealth of the richest nation on earth. The possessions comprising this wealth, as a whole, change hands through death, approximately five times in every century. A difference, therefore, of only an average of two per cent in the capital exactions of fiduciaries upon the portions of estates in which immediate possession is suspended, must in a generation involve such collossal sums as almost to stagger the imagination. When it is realized that this fiduciary relationship is being more and more centered in an ever-diminishing number of large corporations, the consequent effects upon the future of the State and nation and the lives and fortunes of our citizens are worthy of the most careful study and critical analysis.

These observations are in no way to be construed as a disparagement of the valuable contributions made by corporate fiduciaries in the administration of estates or the propriety of adequate recompense to them for services performed. The sole question for determination is as to the basis for their recompense under existing statutes and judicial determinations, which, if furnishing insufficient remuneration, should be altered by direct legislative action rather than by indirection.

Experience in this court has indicated that the estates in which possession of portions of the principal is postponed by testamentary direction, will average a net sum, exclusive of funeral and administration expenses, of approximately $100,000. On such estates, funeral charges, attorneys' fees and other administration expenses and double commissions, if allowable, will eat up about one-tenth of the estate if litigation or unusual difficulties are not encountered. In the event of such complications, the proportion of administration costs will, of course, frequently run much higher.

The executorial commissions as such are not open to question, since they have, in legal contemplation, been fixed by the citizens themselves through their chosen legislative representatives. Whereas it is a matter of common knowledge that the average executor usually does little in the administration of the estate, leaving the active conduct of its affairs to the attorney who must naturally be paid for attending to it, the legislative action has sanctioned this payment. A determination that such representative is entitled to double commissions for the administration of the estate is, however, a judicial act. All adjudications on the subject have determined that the decision on this question must be based on the intention of the testator. In view of the conditions actually existing as distinguished from those presumed by reason of legal

fiction, a heavy responsibility is imposed upon the courts in this regard, particularly since the almost daily inquiry by prospective testators at the departments of this court respecting the costs of administration and the fees of legal representatives demonstrates the real concern of the general public in this subject. As a matter of strict fact, it is probable that scarcely one testator out of a hundred realizes that the savings which he has accumulated by a lifetime of labor and self-sacrifice to insure the continuance in comfort of his dependents when he can no longer personally care for them, will be so largely depleted by commissions and administration expenses as is the practice. Nor does he understand that a slight change in a word or phrase in his will may double the sum which will be subtracted as commissions from the principal fund which he desires to dedicate to the welfare of his dependents. By a legal fiction the language of the will, however technical and complicated, is perhaps necessarily attributed, in all its subtlety, to the testator, no matter what the degree of his lack of understanding of its technical connotation, or even of his positive illiteracy. It cannot be gainsaid that in the average case where a so-called trust is set up in a testamentary document and the one to whom the administration has been confided seeks commissions on the principal at the double rate, all that the testator directed when instructing his attorney in the preparation of his will was that specified persons should have the income from a certain sum or portion of his estate for life and on their deaths it should go to others. Where, under such an instrument, the same administrator is to handle the fund throughout, it would unquestionably be a matter of great surprise to the average testator to learn that his attorney, consciously or unconsciously, had it in his power to double the exaction from the fund by a slight change of phrase or a substantially immaterial manner of directing the same administrator to pay the same money to the identical individual. Under our legal system every man is, of course, presumed to know the law, but this is a very different matter from a solemn determination that in a given case a specified testator actually affirmatively intended that the individual or corporation selected to administer his affairs from start to finish should receive a double payment from the principal funds of his estate, where such individual or corporation merely shifts the fund from one pocket to another and it remains continuously in his or its possession.

It is contrary to human nature for any person to desire to pay a larger sum for a given service when the identical act may be secured for half the amount from the same individual. It follows, therefore, that were this question one of first impression, this

court would have no hesitancy in holding that in the absence of language so clear and unequivocal as to make a contrary determination absurd, a testator should never be deemed to have contemplated that where the same individual is to act from start to finish in the administration of his estate, such action should be construed to be in two different capacities so as to entitle such representative to double commissions.

In other words, it is the opinion of the court that the correct rule respecting holding in a dual capacity should be and is similar to that expressed by the Court of Appeals in *Matter of Tatum* (169 N. Y. 514, at p. 518) regarding equitable conversion: " Unless the purpose of the testator will fail without a conversion, equity will not presume it. There should be an implication of a direction to convert so unequivocal and so strong as to leave no substantial doubt in the mind. * * * Indeed, conversion, to be decreed, must be so necessary as that without it the provisions of the will would be rendered unreasonable and incapable of a just and effective operation."

If, in the foregoing, " conversion " be read " action in a dual capacity," and " convert " be changed to " act in a dual capacity," it precisely expresses the court's conception of the proper rule here applicable.

The reason for the stringency of this rule against conversion is because such a construction may divert portions of testator's estate from certain beneficiaries to others, which course testator will not be held to have desired unless such intention is made to appear beyond a reasonable doubt. In the problem here presented, a holding that a representative is to act in a dual capacity results in a diversion of portions of his estate not from one beneficiary to another, but from the natural objects of his bounty to outsiders, wherefore the basic reason against such a construction possesses considerable additional cogency.

Far from being a matter of first impression, the question of single and double commissions has been passed upon in twenty-two cases by courts whose determinations are here controlling. Those twenty-two decisions were analyzed and reviewed by this court in its opinion in *Matter of Abrahams* (136 Misc. 538), and as a result certain rules applicable to the questions arising in cases of this character were deduced. Unquestionably, a number of the positions which the court deemed established by the decisions reviewed were *obiter*, so far as that case was concerned. They were all, however, based on the authority of one or more of these twenty-two opinions of the Court of Appeals and Appellate Division.

While such dicta as are contained in *Matter of Abrahams (supra)*

are binding on no one, experience has demonstrated that an exhaustive consideration of such subjects, especially, as in that instance, where similar questions are constantly arising, is of no inconsiderable benefit to all concerned. It conserves the time of the court in the study of precedents; it assists the bar by a clarification and comparison of authorities, and it tends to decrease litigation.

The accountant in the case at bar challenges the correctness of one of the rules deduced in *Matter of Abrahams* (*supra*) and seeks a determination that it is to act in a dual capacity both respecting two funds of $1,000 each bequeathed by the "Third" item of the will, and of the residue of the estate, the income from which is payable to testator's son, if living, for life, with remainder to testator's grandchildren.

By the "Third" item the sums in question are directly bequeathed to the named grandsons to be paid to them upon their "being or attaining the age of thirty years." It is further provided that if either be under the age of thirty at testator's death the sum due "shall be held in trust by my executor hereinafter named as trustee," to invest, accumulate the income during minority, to pay over the income with accumulations upon the beneficiary reaching majority, to pay over the income between that age and thirty, and to pay over the principal upon the beneficiary attaining thirty.

Entirely disregarding the considerations hereinbefore discussed respecting the actual as against the possibly presumed intention of the testator, it seems apparent to the court that this is a direct gift to the respective beneficiaries with the time of possession alone postponed and that it comes squarely within the reasoning and result of the Court of Appeals in *Matter of Ziegler* (218 N. Y. 544).

Furthermore, the language of the Court of Appeals in *McAlpine* v. *Potter* (126 N. Y. 285, at p. 289) seems to the court peculiarly directed to the terms of this testamentary provision. It reads: "To the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run on together. It is the duty of an executor as such to pay to a legatee the amount of the legacy in the manner and at the time provided by the testator, and it does not change that duty that the payment of principal is postponed and the income made payable annually in the mean time. A trust duty may thus be imposed upon an executor which thereby becomes and is made a function of his office."

In the opinion of this court that is precisely what was done in this instance. It follows, therefore, that in this respect the executor

as such holds the fund until final distribution and is, therefore, entitled only to a single commission.

Turning now to item " Seventh " of the will, we find a bequest " to my trustee hereinafter named " of the entire residue with directions to invest, etc., to pay the income to a son for life and upon his death or on testator's death, if the son predeceases him, to pay the principal to four named grandsons or their issue *per stirpes*.

By the final item, testator appoints Kings County Trust Company executor of the will " and trustee, if occasion require, of the trust or trusts under paragraphs ' Second ' and ' Seventh ' hereof."

The court fully realizes the danger attendant upon the quotation of extracts from opinions upon the construction of one will in the consideration of another. In so far, however, as such language purports to state general principles, it is unquestionably of some value in reaching a correct result. With this idea in mind, the court feels that the language of certain of the cases cited in *Matter of Abrahams* (*supra*) is useful in determining the rights of the petitioner herein.

The Court of Appeals says, in *Matter of Slocum* (169 N. Y. 153, at p. 159): " There is no distinct separation in the will in the duties of executors from those of trustees. They were to hold the *corpus* of the estate until the death of both his widow and son, and then pay and distribute it to the legatees, * * * meantime to pay the income to the life tenants as they should prove to be entitled thereto under the conditions of the will. There was no direction for a division of the estate into separate funds or trusts. The main purpose of the trust powers given to the executors was to enable them conveniently, wisely and safely to place the estate upon an income-bearing basis, and so administer it that both principal and income should be distributed according to the testator's directions."

In *Matter of Hunt* (121 App. Div. 96) the residue of the estate was devised to the executors " to be received as a trust fund," the present good investments retained, and the balance reinvested, " the executors as such trustees " to pay one-half of the income to each of two children and upon the death of either, the fund to be divided and the half of the deceased paid to his children, while the other half was to be held in trust for the survivor. The court held (at p. 102) that the property was held merely in an executorial capacity until the death of the first child but that after the death of the child first dying the directed division constituted a distinct landmark or point of separation of duties which made the subsequent holding one of pure trust.

In *Matter of Martin* (124 App. Div. 793; modfd., 196 N. Y. 415) the will, after setting up two true trusts, directed testatrix's " executors and trustees " to invest, etc., six-sevenths of the remainder of the estate for the lives of the two youngest of her children, but not exceeding ten years, to pay the income to certain children, and at the end of the period to divide the principal. The Appellate Division (at p. 797) held that the executors acted in that capacity throughout. This construction was approved by the Court of Appeals (196 N. Y. 415, 417) as follows: " As to the corpus of the estate the executorial and trust duties of the appellants were so blended as to render them practically incapable of separation, and this is fairly evidenced by the acts of the appellants in administering the estate."

In *Leask* v. *Beach* (173 App. Div. 873) the court (at p. 876) remarks upon a testamentary direction that funds " shall be paid over " by a representative to himself to be held in trust, to the following effect: " Of course the ' paying over ' of the capital sum by the trustees to themselves was a mere act of bookkeeping and amounted to nothing more than retaining in their own hands certain securities in which the fund had already been invested. The practical result was precisely as if the testator had in terms provided that upon the death of Mahlon Hoagland his executors should ' retain ' the sum of $220,000 for the lives of the designated beneficiaries. If the will had thus provided there would have been no ground whatever for the trustees' claim to triple commissions, and in our opinion the will should be so construed. It is not to be presumed that the testator used the words ' shall be paid over ' merely for the purpose of investing his executors with the right to receive multiple commissions. It is much more reasonable to assume that he intended to effect precisely what his will did effect, to wit, that on the death of Mahlon Hoagland the executors should pay over one-half of the trust fund and continue to hold the other half in trust."

In *Matter of Clinton* (12 App. Div. 132) the estate, after directions for payment of debts, etc., and bequests of certain personal property, was given " to my executors hereinafter named as trustees " to pay the income with power to invade principal, to testatrix's husband for life and on his death to pay any remainder to various legatees. The court held double commissions improper. The petitioner in the case at bar seeks to distinguish this case from the present by reason of a discretionary power to continue a business. Of course, no two wills are ever identical and that provision is not present in the instant will. Nevertheless, it appears at least arguable from the opinion that the court viewed the discretionary

power to continue the business merely as an additional reason for attaining the result already reached. A similar denial of double commissions is found in *Matter of Hogeboom* (219 App. Div. 131).

As this court understands it, the basic rule governing the question is that stated by the Court of Appeals in *Johnson* v. *Lawrence* (95 N. Y. 154, at p. 162), " to entitle the same persons to commissions as executors and as trustees, the will must provide, either by express terms or fair intendment, for the separation of the two functions and duties, one duty to precede the other and to be performed before the latter is begun, or substantially so performed; and must not provide for the co-existence, continuously and from the beginning of the two functions and duties."

By the residuary direction in the case at bar what is the fiduciary to do?  It is to hold the portion of the net estate not required for payment of prior benefactions and pay the income thereof to testator's son for life, if he be living, and upon his death pay over the principal fund to named individuals.  Obviously, the latter direction is not determinative of whether or not action in a dual capacity is intended, since a direct gift with payment only, postponed, is merely a remainder which by no means involves the creation of a trust estate to establish its validity.  (Real Prop. Law, § 38; *Matter of Ziegler*, 218 N. Y. 544.)

The trust must, therefore, arise, if at all, from the requirement that the fiduciary hold the principal and make payment of its income to testator's son during his lifetime.  But this is no new obligation arising at a time subsequent to the completion of the purely executorial duties.  The executor must hold the corpus of the estate from the moment he qualifies in that capacity and the son is entitled to receive the income earned by the portion of the estate dedicated to him, from the date of the death of the testator; and the executor, as such, is under a corresponding duty to pay it to him.  (*Cooke* v. *Meeker*, 36 N. Y. 15, 22; *Matter of Stanfield*, 135 id. 292, 294, 297; *Bank of Niagara* v. *Talbot*, 110 App. Div. 519; affd., 184 N. Y. 576; *Matter of Harden*, 177 App. Div. 831, 838; affd., 221 N. Y. 643.)

That the accountant herein sensed the difficulty of its position so far as this claim for double remuneration is concerned, seems evident from its account in which it seeks settlement of " its account as executor and trustee."  In Schedule E, part I, the Kings County Trust Company, as executor, recites payments by it to the Kings County Trust Company as trustee.  The dates when it thus transferred the money from one of its pockets to another are not stated. In Schedule E, part II, certain payments of income by the Kings County Trust Company are set forth, one of which was less than

seven months after the issuance of letters and more than eight months prior to the date of the petition for the settlement of the executor's account.

Although in the account the executor applies for commissions as executor in general terms without separate reference to income and principal, the proposed decree in its computation of commission does not ask for commissions on income paid over to itself as trustee. If the right to double commissions is sound, it is difficult to see the reason for this action except to attribute it to generosity. The result, however, demonstrates the absurdity and unfairness to the intended beneficiary more clearly than mere words could do, showing the possibility, in certain cases, of a deduction of ten per cent from the income provided by testator for the beneficiaries' support as a result of the combined operation of ineptness in testamentary expression and a presumption of law whose artificiality in this connection is demonstrated by all human experience. It is scarcely a sensible supposition that an individual with sufficient mentality to warrant a holding that he had testamentary capacity, intended that after the fiduciary of his estate had received a commission on the receipt and payment over of the income intended for a designated beneficiary, the same fiduciary should receive an additional five per cent on the same sum by reason of the fact that he had entered the transaction on a different page of his ledger.

The attempted consistency of the accountant has, however, placed it in an anomalous and indefensible position so far as concerns the construction of item " Third " of the will. As has been noted, the benefactions therein expressed are direct bequests to two grandsons of $1,000 each, such amounts to be paid them respectively upon their " being or attaining the age of thirty years." If, at testator's death they complied with this condition, each, obviously, would have been entitled to that sum and in addition thereto to interest from the time he was entitled to receive payment thereof, which is at the expiration of one year from the grant of letters. (Surr. Ct. Act, § 218; *Matter of Stanton*, 41 Misc. 278; *Matter of Bronner*, 30 id. 31; *Matter of Barker*, 186 App. Div. 317; modfd., 230 N. Y. 364; *Matter of Juilliard*, 103 Misc. 178.) Testator's subsequent directions in this item amount only to a limitation upon such gift in case the specified age had not been attained, by directing that possession of principal be withheld until the age of thirty had been reached. The construction of the accountant would result in an increase in the size of the benefaction by adding thereto interest from the date of testator's death to the expiration of one year from the grant of letters. The financial difference would probably be small, perhaps approximately fifty dollars, but

the principle involved is important. Testator's words expressly limiting the absolute beneficial enjoyment of the benefaction can by no stretch of the imagination be construed as increasing the amount thereof. It follows that the so-called payments of income by the accountant to itself during the year subsequent to letters were in any event unauthorized by the will in so far at least as they applied to the bequests in item " Third."

While the foregoing is unquestionably an interesting sidelight on the problem involved, the point particularly stressed at this time concerns the residuary item, and is that under the rule of *Johnson* v. *Lawrence,* as quoted *supra,* the duties of the fiduciary must be separate, one must " precede the other " and " be performed before the latter is begun " to entitle such fiduciary to double compensation. Here the identical duties, so far as this fund is concerned, are imposed upon the fiduciary from the moment it qualifies as executor until the final payment to the ultimate remaindermen, and the facts, therefore, fall within the inhibition of the Court of Appeals in that case to the effect that double commissions must not be allowed where the terms of the will " provide for the co-existence, continuously and from the beginning of the two functions and duties."

As the court views this gift of the residue of the estate, the testator had two things which he might give in this connection, namely, *first,* the income which might be derived from the principal fund for not exceeding two lives in being at his death, and, *second,* the remainder, after the expiration of such period. He elected to make this double gift and directed his fiduciary to pay the first part (to the extent of the income during a single life) to his son, and the remainder to his grandchildren. In doing this, he vested no greater powers and imposed no greater obligations on this fiduciary than those inherent in and imposed upon any executor. This is evidenced by the language of the Court of Appeals in *McAlpine* v. *Potter,* quoted above. No trust is necessary to carry out the wishes of the testator, and the mere fact that a fiduciary may elect, for his own advantage, to put on a different uniform at different stages of the performance of his duties, should not be permitted to operate to the disadvantage of the estate to which he owes a duty of *uberrima fides.*

It may perhaps be felt that the discussion of this question has been extended beyond a reasonable length, particularly since the views of the court on the subject have been expressed on previous occasions. It should be recalled in this connection, however, that the position of the court in this regard has never before been seriously challenged, and since the questions here involved are presented

virtually *ex parte* by representatives of those financial institutions which will profit to the extent of an almost incalculable aggregate sum if a contrary rule should be established, it is incumbent on the court, as the trusted guardian of the interests of the fatherless and the widow, to clarify its position so far as possible in order that an appellate tribunal may have such benefit as may be derived from the experience and research of the court of first instance to which this problem is a matter of daily occurrence. The far-reaching importance of a determination of the subjects here involved is difficult of exaggeration. Every testator relies upon the surrogate in the first instance and the higher courts, if occasion requires, to see to it that his property, after his death, is made available, without improper diminution, for his family or named beneficiaries. Were the idea to become prevalent that his attorney, by ineptness or inadvertence — eliminating design — could subject his estate to unnecessary exactions and that the courts, by the application of a legal fiction, contrary to the most fundamental concepts of human experience, would uphold such unnecessary diversion, the untoward consequences could not be other than disastrous. It would not only still further undermine the confidence of the public in the legal profession and add to its sometimes cynical attitude toward the law and the courts, but might well have a far-reaching and injurious effect on the habits of thrift and foresight which are a part of the fundaments of our national prosperity. Counsel for the Kings County Trust Company did not draw the will under consideration.

For the reasons stated and upon the authority cited, this court is satisfied, as previously stated in *Matter of Abrahams (supra)*, that controlling authority has determined that in a case like the present, where a single person is named to administer an estate from start to finish, where a gross and undivided fund is to be held by such fiduciary with income payable to specified individuals for a period, the division of the principal to take place at some future time, such fiduciary, by whatever name or names he may be designated in the will, is not entitled to a double compensation from such fund.

Submit decree, on notice, accordingly.