In the Matter of the Estate of GEORGE D. GREGORY, Deceased.

Surrogate's Court, Kings County, February 28, 1934.

*Lewis C. Grover*, special guardian.

*Underhill & Foster*, for the executors.

WINGATE, S.    The only question here presented for decision is the perennially controversial one of whether the terms of the will. at bar are such as permit the testamentary fiduciaries to make a dual exaction of commissions upon the principal of the estate by the withdrawal thereof both in the capacity of executors and of trustees.    The question can hardly be called one of insignificant importance to the beneficiaries of the present estate, since it involves the determination of whether the executorial commissions on principal which will aggregate in excess of $18,000 shall be increased by a further principal deduction payable to the same persons as trustees, of approximately $14,000.

This question like all others involving testamentary interpretation is determinable in accordance with the intention of the testator as discernible from the terms of the will, when read in the light of the provisions of the pertinent statute which, in this instance, is section 285 of the Surrogate's Court Act (*Matter of Mann*, 145 Misc. 360): " double commissions to the same persons, first in the character of executors and then in that of trustees, are to be awarded only when the will contemplates a several and separable action in each capacity, not at the same but different stages of the administration, and * * * they are not to be allowed where the will makes no such separation, but blends the two duties and commingles them without a severance. To the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run on together. It is the duty of an executor as such to pay to a legatee the amount of the legacy in the manner and at the time provided by the testator, and it does not change that duty that the payment of the principal is postponed and the income made payable annually in the meantime. A trust duty may thus be imposed upon an executor which thereby becomes and is made a function of his office. A will must go further than that to admit of double commissions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and to require him thereupon to constitute and set up one or more several trusts, to be held and managed as such for the interest of the beneficiary." (*McAlpine* v. *Potter*, 126 N. Y. 285, 289.)

The most common error committed by litigants of this general question is in failing to differentiate respecting the capacity in which the particular fiduciary acts in executing the trust provisions of the will. The mere fact that the terms of the will direct the holding of a specified sum by the fiduciary and the payment of its income for a period to one individual and of the principal, at the termination of the period, to another, while unquestionably constituting a trust (*Matter of Galloway*, 139 Misc. 183, 186) within the usual connotation of the term (*Matter of Ebbets*, 149 Misc. 260, 265), does not necessarily entitle the particular fiduciary to a double compensation on principal, since under *McAlpine* v. *Potter* and similar authorities too numerous to mention, this trust duty may, by the terms of the will, have been merely added to the other duties of the executor. If this has occurred, the fiduciary is still merely an executor and is entitled only to the single remuneration allowed by the statute to one acting in that capacity, in spite of the greater labor which the terms of the will have imposed upon him.

The question, therefore, resolves itself again largely into one of

the intention of the testator, and since it is indeed extremely rare that an explicit expression of testamentary intent in this regard is found, such desire must be deduced in part from the general language of the instrument, but more especially from an analysis of the testamentary structure, the duties imposed upon the fiduciary, and perhaps most important of all from the time or times, or stages of administration, at which the performance of the several fiduciary acts are directed.

Since this process of interpreting the testamentary intent is merely a deduction by the court of the probable state of mind of the testator on the subject, at the time he executed the will (*Matter of Hoffman*, 146 Misc. 535, 537; *Matter of Mann*, 145 id. 360, 361; *Matter of Marsh*, 143 id. 609, 615; *Matter of Mehler*, Id. 63, 64; *Matter of Tuozzolo*, 141 id. 251, 253), it is only natural and proper for the court in weighing the probabilities to consider the usual tendencies of mankind in similar matters. Of course, this consideration can be given no controlling weight where the results of testator's directions are unquestionable, either as directing the erection of clearly severable trusts in the hands of a distinct fiduciary, or the reverse, since every person is legally presumed to intend the natural consequences of his acts. Where, however, these acts or directions are ambiguous and capable of explanation on either theory, the court should take into consideration the usual attitude of the average individual in such matters, and give it such weight in the determination as it may be entitled to receive. " It is contrary to human nature for any person to desire to pay a larger sum for a given service when the identical act may be secured for half the amount from the same individual." (*Matter of Jackson*, 138 Misc. 167, 170.) It, therefore, follows that " whereas the allowance of such double charges for the performance of what, in essence, constitute single services, may be tolerated in cases in which the testamentary intent to that end is clear, no presumption will be indulged that the testator desired thus to deplete the benefit dedicated to a minor dependent." (*Matter of Quinlan*, 147 Misc. 483, 484.)

By way of summary, therefore, it may be said that the question of whether testamentary fiduciaries are entitled to a double payment from principal, in the absence of an expressed wish on the subject, depends primarily upon whether the natural results of the particular testamentary directions " were exceptional in their nature and contained provisions distinctly and definitely pointing to a holding by trustees as such after the duties of the executors were completed and ended." (*McAlpine* v. *Potter*, 126 N. Y. 285, 290.)

Before approaching an analysis of the directions of the will at

bar in an effort to determine whether such implied intent for a double payment is properly inferable therefrom, it will be well to have a clear conception of the ordinary duties of executors. These have been frequently described and are scarcely capable of forming the subject of controversy. The usual functions of this fiduciary are those of " collecting and reducing to possession the assets of the estate and, after paying debts, to have the balance in hand for distribution " (*Matter of Union Trust Co.*, 70 App. Div. 5, 9; *Matter of Ebbets*, 149 Misc. 260, 265; *Matter of Te Culver*, 22 id. 217, 221) with the added duty of paying " to a legatee the amount of the legacy in the manner and at the time provided by the testator." (*McAlpine* v. *Potter*, 126 N. Y. 285, 289.)

The will at bar contains seventeen numbered items. The first directs payment of debts, etc. The second, third and fourth give general bequests aggregating $61,000. The fifth, sixth, seventh and eighth are in substantially identical form. For purposes of example, the wording of the fifth will be substantially reproduced.

" If my Friend, Charles H. Boyer * * * survives me, I give and bequeath to my Executors hereinafter named, in trust, nevertheless, the sum of * * * $25,000, to invest * * * and, after first deducting all expenses attendant upon the execution of the trust, to pay the income therefrom to my said friend, Charles H. Boyer, * * * as long as he shall live and, upon the death of my said friend * * *, or upon my death, in case the said Charles H. Boyer shall predecease me, I give and bequeath the principal of the said trust to my said wife, Evelyn F. Gregory, if she shall be living at the happening of the last of either of said events, and if she be not so living, then the principal of the said trust shall become a part of my residuary estate and be disposed of, as hereinafter provided, in respect thereof."

The sixth, seventh and eighth items made identical provisions except for the primary beneficiaries named, the aggregate of these gifts amounting to a principal sum of $12,500.

The ninth, tenth and eleventh items of the will were concerned with specific bequests to the widow, the ninth and eleventh providing that if she were not living at testator's death the subject-matter should " become a part of my residuary estate and be disposed of, as hereinafter provided, in respect thereof." A similar direction was contained in the tenth item conditioned on the predecease of the wife and of three named daughters.

The twelfth item, which was the residuary direction of the will, is too long for repetition *in extenso*. Suffice it to note that it gave the remainder of the estate " to my executors hereinafter named, in trust, nevertheless," with directions to pay the income to the widow

for life, with the further direction to "my said executors" to pay her semi-annual principal sums of not exceeding two and one-half per cent of the trust estate, at her request. Upon the death of the wife, it was provided: "I direct my said executors to pay over and distribute the principal" to his descendants *per stirpes*, provided, however, that if his named three daughters were living, "I direct my executors to hold the portion or share to which my said daughter * * * would be entitled, in trust, nevertheless" upon trusts substantially identical with that for the wife, the principal funds to be paid over to the descendants of the respective daughters *per stirpes*.

The "fifteenth" item appoints the widow and another "the executors of and Trustees under" the will "without bond in either capacity" with broad powers. The language employed in this connection possesses no present pertinence except a portion of the last sentence in the item, which reads in part as follows: "For convenience in the administration of any trust vested in my Executors, I direct that the signature of either of them on behalf of the trust estate * * * shall be sufficient to bind the trust estate."

The sixteenth item provides for the appointment of the New York Trust Company to act as successor "Executor and/or Trustee" in the event that the original nominees cease "for any reason to act as such Executor and/or Trustee."

Such negligible weight, if any, as is to be attached to the use of fiduciary designations indicates a testamentary intent that those portions of the directions embraced in the fifth to eighth items of the will, inclusive, and in the residuary trust for the wife, were to be purely executorial trusts. In each case the gift is "to my Executors hereinafter named in trust," and in the fifteenth item testator refers to "any trust vested in my executors."

Whereas, however, the designation of the fiduciary as "executor" has been considered as lending weight to a result allowing single commissions only (*Matter of Slocum*, 169 N. Y. 153; *Matter of Ziegler*, 218 id. 544, 552–554; *Matter of Abrahams*, 136 Misc. 538, 544), much greater importance is to be attached to the testamentary setup and to the natural results of the directions contained in the will.

Under the quotation from *McAlpine* v. *Potter* (*supra*) the Court of Appeals has laid down as a *sine qua non* to the allowance of a second commission, that the "will * * * must clearly and definitely indicate an intention to end the executor's duty at some point of time, and to require him *thereupon* to constitute and set up one or more several trusts." (Italics not in original.) In other

words, to entitle the fiduciary to claim compensation in a second capacity, a demonstration must be made by him of an actual termination of his duties in the capacity of executor in accordance with the testamentary direction. It is, however, firmly established on the authority hereinbefore cited that one of the essential executorial duties is to have the estate " in hand for distribution." This applies to the residue of the estate as well as to any other portion thereof, and until that time arrives the executorial duties are not complete. It, therefore, follows that where the residue may not be completely constituted until after the termination of certain trust provisions, as in the case of the trusts under the fifth to eighth items of the present will, the performance of the executorial duties is incomplete and the fiduciaries in respect thereto continue to act in a purely executorial capacity.

The determination of the Appellate Division for the First Department in *Matter of Vanneck* (175 App. Div. 363) is especially pertinent in this connection. There the sum of $12,000 was given to the executors on a trust for one Minnie Callahan, with a direction that upon her death " the sum so directed to be held in trust for her life use is to revert to and become part of my residuary estate." A subsequent clause disposed of the residue.

The court says (at p. 364): " It is evident that until the death of Minnie Callahan this fund cannot be paid out or distributed except by the executors as such in discharge of their duties under the will. The distribution is an executorial function, and until this has been made the duties of the executors will not have been finally and fully completed. To the duties of executor there is added during the term of the life of Minnie Callahan a trust duty. This does not, however, change the character in which they hold the fund. The trust duty became a function of their office as executors. The executors are not entitled, therefore, to receive upon this fund trustees' commissions in addition to their commissions as executors." (See, also, *Johnson* v. *Lawrence*, 95 N. Y. 154; *Matter of Ziegler*, 218 id. 544, 553; *Matter of Blun*, 176 App. Div. 189; *Matter of Abrahams*, 136 Misc. 538, 546, principle 7 [d].)

It follows, therefore, that so far as concerns the executorial trusts erected by items fifth to eighth, inclusive, no second commission is payable to the fiduciaries.

The remaining question concerns the residuary trust for the widow. As noted, this is also a gift to the executors in trust. It is a gift of " a gross and undivided fund," " to be held for a single individual as life tenant with remainder over on the happening of some future event," and, therefore, falls squarely within the deduced rule of *Matter of Abrahams* (136 Misc. 538, 545) numbered " 7 (c)."

In view of the numerous occasions on which a gift of this type has been held to effect a continuation of the executorial functions until the termination of the holding for the life tenant, any repetition of the basic principles involved would be a labor of supererogation at this time. (See *McAlpine* v. *Potter*, 126 N. Y. 285, 289; *Matter of Slocum*, 169 id. 153, 159, 160; *Matter of Ziegler*, 218 id. 544; *Matter of Clinton*, 12 App. Div. 132, 137; *Matter of Hogeboom*, 219 id. 131, 138; *Matter of Mart*, 139 Misc. 558; affd., 237 App. Div. 840; *Matter of Rappold*, 138 Misc. 163; *Matter of Jackson*, Id. 167; *Matter of Halbert*, 141 id. 181; *Matter of Lite*, 142 id. 792; *Matter of Quinlan*, 147 id. 483.)

Whether or not on the death of the wife the erection of the separate trusts for the daughters will involve a separate action by the fiduciaries which would entitle them to commissions as trustees upon the separate sums dedicated to the life use of the daughters, is a question not necessary for present determination and upon which no opinion is expressed.

It is, therefore, determined that at the present time the fiduciaries are entitled to receive only a half commission for receiving as executors, the remainder thereof to become payable upon the completion of the executorial duties imposed upon them by the terms of the will. Proceed accordingly.