# IN THE MATTER OF THE ESTATE OF MARY E. FOSTER, DECEASED.

## No. 2244.

ARGUED DECEMBER 6, 1935.　　　　DECIDED JANUARY 27, 1936.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE CASE IN PLACE
OF BANKS, J., UNABLE TO ATTEND ON
ACCOUNT OF ILLNESS.

OPINION OF THE COURT BY COKE, C. J.

The last will and testament, consisting of a will and codicil, of Mary E. Foster, deceased, was admitted to probate in the circuit court of the first judicial circuit, Territory of Hawaii, on February 11, 1931.  E. H. Wodehouse and J. L. P. Robinson were named as executors.  The executors qualified as such and assumed their duties.  The deceased left an estate of large value in the Territory and by the terms of her last will bequeathed various substantial sums to sundry persons and institutions.  The total amount of these pecuniary legacies was approximately $1,400,000.  Wodehouse and Robinson were also named by the testatrix as trustees of a residuary trust estate created under her will.

On July 25, 1932, the executors obtained from Honorable Charles S. Davis, the circuit judge then presiding in probate, an order allowing their final accounts and "subject to such order or orders as the court may enter in the premises on final hearing after payment of the legacies bequeathed by the said will and the codicil thereto and the disposition of the matters referred to in the report of the said masters which are as follows:  (1) The balance of $25,000.00 due and payable to each of six legatees. (See page 7 of masters' report.)  (2) The claim of the Maternity Home, submitted on an agreed statement of facts and which is pending in the supreme court of the Territory of Hawaii.  (See pages 8 and 9 of masters' report.)  (3) The claim of Edward A. Vaughan, namely, that he is a nephew of Mary E. Foster and as such entitled to a legacy of $50,000.00 and ultimately to partici-

pate in the distribution of the estate.    (See pages 11 and 12 of masters' report.)    That, subject as aforesaid they be, and hereby are discharged from all further and future liability and responsibility as such executors; their bond cancelled and the sureties thereto released from further obligation; they do deliver over the property remaining in their hands to the persons hereinafter named, and do file with this court a proper receipt or proper receipts therefor; and also proper receipts for the inheritance tax payable to the Territory of Hawaii and the estate tax payable to the Territory of Hawaii and the estate tax payable to the United States in respect of the said estate * * *. The persons entitled to the said property of the estate of the said Mary E. Foster, deceased, remaining in the hands of the said E. H. Wodehouse and J. L. P. Robinson as such executors are the said E. H. Wodehouse and J. L. P. Robinson as trustees under the will and of the estate of said Mary E. Foster, deceased." The effect of this order was to keep open the probate proceedings and to leave in the hands of the executors sufficient assets to satisfy the legacies and disputed claims as well as federal estate taxes which had not at that time been discharged. These unpaid claims and taxes aggregated approximately $108,000.

On September 2, 1932, the executors presented a verified petition containing an allegation "that by reason of the depreciation in the value of real and personal property in the Territory of Hawaii and the almost complete absence of buyers for such real and personal property as constitutes the residuary estate, the same could not be sold except at prices much below the reasonable value of same to the great injury of the persons interested in the income and in the said residuary estate." The petition closed with the prayer that the petitioners as executors "be authorized, directed and empowered to receive from themselves as such executors all of the real and per-

sonal property in their hands as such executors * * * subject to the payment of the said unpaid legacies and claims, and that they be authorized and directed to pay the said unpaid legacies and claims so soon as the amounts of such legacies and claims are ascertained and funds are available for the purpose."

On September 16, 1932, Wodehouse and Robinson obtained from Circuit Judge Davis, presiding in probate, what is termed an "order amending order approving accounts, of distribution and discharge of executors." This order required the executors to deliver over the property of the estate in their hands as executors to themselves as trustees but subject to the payment by the latter in the place and stead of the executors of the undischarged legacies and obligations. The executors were ordered to file with the court a proper receipt or receipts for said property signed by them as such trustees acknowledging receipt of the property subject to the payment by them of the obligations aforesaid, which said receipt "shall have annexed thereto a certified copy of an order of the presiding judge in equity in the Matter of the Trust Estate Created by the Will of Mary E. Foster, Deceased, ordering said trustees to accept distribution of said property subject to the payment of the said legacy of $50,000; of the balances of said six legacies; and subject to the claims of the Maternity Home and Edward A. Vaughan and the United States of America as aforesaid; but this order is made subject to the payment by such executors of the sum of $50,000 or $25,000 to the said Maternity Home whichever is payable; of $50,000 to the said Edward A. Vaughan, if payable, and to the United States of the said sum of $38,000, if payable, or in the alternative that the said executors file in this court a satisfactory bond in the sum of $100,000 the proceeds of which shall be available to discharge all of the said claims of the Maternity Home;

of the said Edward A. Vaughan and of the United States or such of them as shall be found to be payable." Upon the entry of the above order the probate judge immediately sat as the presiding judge in equity and entered an order therein requiring said trustees to accept distribution of the property from themselves as executors and directed them to pay the said unpaid legacies and claims as soon as the amounts of such legacies and claims were ascertained and funds became available for the purpose.

It appears that the executors elected to supply the bond in question and filed with the court an undertaking in the sum mentioned with the Columbia Casualty Company as surety, which bond was approved by the circuit judge and they also filed the required receipt signed by the trustees. It should be here pointed out that the bond is so crudely drawn and its provisions so deficient and inapplicable as to create a serious doubt of its enforceability under any of the contingencies which might have arisen following its execution.

The trustees thereupon took over from themselves as executors all of the remaining assets of the estate following which the executors apparently considered that they were finally discharged and absolved from all further duties or responsibilities and the trustees appear to have assumed that they *ipso facto* became clothed with sole and exclusive power and authority to perform all functions necessary to the final completion of the administration of the affairs of the estate. The trustees for the purpose of paying some of the legacies in question then proceeded to sell certain of the securities of the estate receiving therefor the sum of $60,612.26. In their account they credit themselves with commissions totaling $1515.31, or two and one-half per cent on $60,612.26.

Upon the recommendation of the master and the objection of the representatives of the estate of Victoria

Ward, one of the beneficiaries under the will of Mrs. Foster, Circuit Judge Godbold, the present judge of the circuit court sitting in equity, disallowed the commission and awarded counsel for the Ward estate a fee of $250 for their services in resisting the claim for commissions aforesaid.

From the decree of the court below Wodehouse and Robinson, trustees, have perfected an appeal to this court, the appeal involving the two questions hereinabove indicated, namely, the disallowance of the item of trustees' commissions and the allowance of the fee to counsel for the Ward estate. Testamentary executors and trustees, in the absence of testamentary provisions to the contrary, are entitled to certain fees provided by section 3793, R. L. 1935, the pertinent provisions whereof are as follows: "Upon the principal of the estate, executors * * * shall be allowed as commissions payable out of the principal at the close of administration, five per centum for the first thousand dollars, four per centum for the next nine thousand dollars, three per centum for the next ten thousand dollars, two per centum for the next thirty thousand dollars and one per centum for all over fifty thousand dollars, the amount of such principal for this purpose to be the appraised value of the estate as of the death of the decedent." (For the purpose of computing such commissions on principal the statute prescribes certain deductions from the appraised value thereof which are immaterial to the issues.) "Upon the principal of the estate, trustees * * * shall be allowed as commissions, one per centum on the value at the inception of the trust payable at such inception out of the principal * * * and two and one-half per centum upon all cash principal received after the inception of the trust and neither being nor representing principal upon which the two and one-half per centum has previously at any time been charged, payable

at such receipt out of the principal, and two and one-half per centum upon the final payment of any cash principal prior to the termination of the trust, payable at the final payment out of the principal. For the purposes of this paragraph, the value of the estate shall be determined in such manner as the court may approve."

On September 16, 1932, the date of the abortive attempt to close the administration of the estate in probate, Wodehouse and Robinson had received, as executors of the will of the testators, all commissions to which they were entitled "upon the principal of the estate."

Upon the assumption by Wodehouse and Robinson of their duties as trustees they received from and receipted for to themselves as executors, the securities which they subsequently sold as trustees and upon the net proceeds of the sale of which they claimed the commissions in dispute. These commissions are claimed by them under the provisions of the statute allowing trustees "two and one-half per centum upon all cash principal received after the inception of the trust and neither being nor representing principal upon which the two and one-half per centum has previously at any time been charged."

This appeal does not involve the question of what commissions, if any, Messrs. Wodehouse and Robinson would be entitled to upon the payment of the legacies and claims referred to in the orders of September 16, 1932. But if the net aggregate proceeds of the said sale of said securities as claimed by them is "cash principal received after the inception of the trust" then it would logically follow that the payments of legacies and claims when eventually made to the legatees and claimants referred to in said order would constitute "final payment of * * * cash principal prior to the termination of the trust" upon which they would be entitled to additional commissions of two and one-half per cent.

The original will of Mrs. Foster did not create a trust estate but provided for the disposition of her entire estate in probate. The codicil to the will, however, materially changed the original will; some legacies were revoked, others reduced, some were increased and many new legacies established. Following the provisions in the codicil making specific pecuniary bequests to numerous persons and institutions, the testatrix devised and bequeathed all the residue of her estate to Wodehouse and Robinson as trustees to be dealt with as directed in the codicil. But the testatrix specifically required "that all legacies or sums of money bequeathed by my said Will and this Codicil thereto *shall be paid by the Executors of my Will* free and clear of all inheritance taxes." While the will contains no express direction that the claims against and the obligations of the estate be paid by the executors, it is fundamental that the same must, unless waived by the creditor, be paid and discharged prior to close of administration. *Estate of Ahi,* 19 Haw. 232.

In so far as the court orders of September 16, 1932, purport to authorize the transfer by the executors of such of the assets of the estate as were necessary to discharge the legacies and to pay the estate obligations and to clothe the trustees with the power and duty to discharge the same out of the funds of the estate, they must be held to be wholly void because to that extent they contravene the express provisions of the will of the testatrix and the legal duties of administration. No legal justification appears for the failure of the executors to close the administration of the estate prior to causing distribution to be made to themselves as trustees. The main ground alleged was that by reason of a depreciation in the value of real and personal property in the Territory of Hawaii and the almost complete absence of buyers for such real and personal property as constitutes the residuary estate the

same could not be sold except for prices much below the reasonable value of same to the great injury of persons interested in the income and in the said residuary estate. The distribution, however, of the property of the estate to the trustees could not have stimulated the market nor enhanced the value of the property. The condition of the market would remain the same irrespective of whether the property was held by the executors or by the trustees and as executors they possessed all the facilities to sell the property that were or could have been possessed by them as trustees.

The executors had received their full commissions as provided under section 3793, R. L. 1935, and this was the sole compensation to which they were entitled for the performance of their duties as executors including the conversion of the securities and the application of the net proceeds to the payment of the legacies and claims against the estate. To permit the appellants as trustees to again charge against the net aggregate proceeds of the sale of these securities an additional two and one-half per cent as "cash principal received after the inception of the trust" would in effect subject the fund to additional trustees' commissions for the performance of the same duties for which they had been compensated as executors,—that is to say, double commissions. To pursue the appellants' theory to its logical conclusion they as trustees would further be entitled to a commission of two and one-half per cent upon the application of the fund to the payment of the legacies and claims,—in short, triple commissions, and this by way of compensation for services for which but one commission is legitimate and for which they as executors had already been paid. The statute does not permit of any such absurdity.

As heretofore set forth in detail, upon the date of the orders of September 16, 1932, some of the legacies pro-

vided for in the will of Mrs. Foster remained unpaid and certain claims against the estate were unsatisfied. The effect of the court's order of that date was to nullify the provision in the will of the testatrix which required that all legacies should be paid by her executors and to substitute in lieu thereof a provision authorizing the trustees to pay the then remaining outstanding legacies. The will of a person of testamentary capacity which is unambiguous is binding on the courts and they cannot rewrite the will of the testator nor vary its provision. "The testator having written his will, it is the exponent of his intention; and, if that is clear, and if in the will itself there is no ambiguity, it is obligatory upon the courts; and it is not within the duty or within the power of the courts to annex another condition to that contained in the will. To do so would be making a will for the testator." *Citizens' & Southern National Bank* v. *Clark,* 158 S. E. 297. "Court must give effect to provisions of will, unless they violate some rule of law." *Hill* v. *Fill,* 57 Fed. (2d) 438. See also *Cammann* v. *Bailey,* 103 N. E. 824.

As pointed out in *In Re Gregory's Estate,* 269 N.Y.S. 880, 882, 886, " 'double commissions to the same persons, first in the character of executors and then in that of trustees, are to be awarded only when the will contemplates a several and separable. action in each capacity, not at the same but different stages of the administration.' [*McAlpine* v. *Potter,* 126 N. Y. 285, 289.] * * * To entitle the fiduciary to claim compensation in a second capacity [trustee], a demonstration must be made by him of an actual termination of his duties in the capacity of executor in accordance with the testamentary direction." No such demonstration has been or can be made by the executors in this case. The intention of Mrs. Foster as expressed in her will is manifest and this intention must control.

We therefore hold that Wodehouse and Robinson have not been legally discharged as executors and must continue to function as such until they have performed the duties required of them under the terms of the will of Mrs. Foster including the duty to discharge all legacies as well as the debts of the estate. It must be further held that in selling the securities in question Wodehouse and Robinson were acting in their capacity as executors and having already received from the estate the entire commissions allowed them by statute they are entitled to no additional or other commissions upon the proceeds derived from the sale. Counsel for the trustees complains of the fact that the reasons assigned by the circuit judge for his conclusion that the commission should be disallowed are not supported by the record. It is primary and elementary in this jurisdiction that "the decision of the circuit judge cannot be reversed because he gave wrong reasons, provided he came to a correct conclusion." *Calaca* v. *Caldeira,* 13 Haw. 214; *Colburn* v. *Holt,* 19 Haw. 65; *Lee Lun* v. *Henry,* 22 Haw. 165; *Consolidated Amusement Co.* v. *Hughes,* 22 Haw. 550.

The final question involved in this appeal is the propriety of the allowance by the circuit judge of the sum of $250 as a fee to the attorneys representing the Ward estate who appeared in the court below and resisted the allowance of illegal commissions to the trustees. Counsel for appellants concedes that if the disallowance by the court below of commissions is approved here then the award of attorneys' fees should be sustained. We agree with him.

The decree appealed from is affirmed.

*A. Perry* (also on the briefs) for trustees of the Foster Estate.

*N. W. Newmark* (*Robertson & Castle* on the brief) for the executors of the Ward Estate.