E. FAXON BISHOP, ET AL., TRUSTEES UNDER THAT CERTAIN DEED OF TRUST MADE BY CHARLES R. BISHOP, DATED AUGUST 1, 1895, *v.* SAMUEL B. KEMP, ATTORNEY GENERAL OF THE TERRITORY OF HAWAII.

No. 2365.

SUBMITTED NOVEMBER 21, 1938.      DECIDED MARCH 23, 1939.

COKE, C. J., CIRCUIT JUDGE CRISTY IN PLACE OF KEMP, J., DISQUALIFIED, AND CIRCUIT JUDGE METZGER IN PLACE OF PETERS, J., ABSENT.

OPINION OF THE COURT BY COKE, C. J.

The petitioners-appellants, who are the trustees under a certain deed of trust, as thereafter amended, executed by Charles R. Bishop, late of Honolulu, Hawaii, and San Francisco, California, filed a bill in equity in the circuit court of the first judicial circuit praying that they might be advised in reference to their authority to invest trust funds in improved and income-producing real estate. They allege in their petition that due to the low rate of interest on investments in securities, such as bonds or other evidence of debt, and the difficulty of making loans on satisfactory real estate mortgages, the appellants have accumulated a large sum of trust money which at present is earning only negligible bank interest and that better use can be obtained through investment in improved and income-producing real estate and that they have an opportunity to purchase certain desirable real estate in Honolulu and would purchase the same if they had power to do so. Being in doubt, however, of such power, they have petitioned the circuit court for instructions.

The trust being a public one, the attorney general of the Territory was named as respondent. The latter interposed an answer in which he asked that the petitioners be advised and instructed that they are not authorized or empowered to and may not use any moneys that have or

may hereafter come into their hands under or by virtue of the provisions of said deed of trust and amendments thereto for the purchase of real estate.

Upon this issue the cause was tried by the judge of the circuit court presiding in equity who, upon the conclusion of the hearing, rendered a decree instructing the trustees that they were not authorized under the trust instruments to invest money of the estate in real property. The trustees have appealed.

Paragraph eleven of the original trust deed executed by Mr. Bishop provides that: "The said Trustees and their successors shall, at all times during the existence of this Trust, have the right to invest surplus income, and any principal sum paid in, to sell the whole or any part of the property that may come into their hands hereunder, without any order of Court first had or obtained and without subsequent confirmation by any Court; to reinvest the proceeds as to them shall seem wise, having more regard to perfect security than high rate of interest; to change investments, and in every way deal with said property free from any restraint or limitation; nor shall any purchaser at any time be charged with any duty as to the disposition of any sum that may be realized from any sale of any property of or that may become a part of this Trust." The same provision appears in the first amendatory deed, dated July 24, 1897. In the fourth and last amendatory deed, dated April 8, 1910, this paragraph was amended to read as follows: "The Trustees hereunder shall at all times during the existence of this trust have the right to sell the whole or any part of the property that may come into their hands hereunder or be subject to the trusts hereby created without any order of Court first had or obtained or without any subsequent confirmation by any Court to invest all moneys that shall from time to time come to their hands under or by virtue of the pro-

visions of this deed of trust requiring investment including the proceeds of sale of any part of the real and personal property subject to the trusts hereby created in such securities as to the said Trustees shall seem wise having regard more to good security than to high rates of interest. Investments may be made in the purchase of the bonds of any state, territory, county or municipality of the United States or of any public service corporation organized under the laws of any state or territory of the United States and operating in the United States. The said Trustees shall also have the right to change investments from time to time and in every way deal with the property subject to the trusts free from any restraint or limitation; nor shall any purchaser at any time be charged with any duty as to the disposition or application of any sum that may be realized from any sale of any property of, or that may become a part of, this trust."

Mr. Bishop, the creator of the trust in question, was a well-known banker and businessman of the Hawaiian Islands and San Francisco, California. He died about a quarter of a century ago and left a large and valuable estate within the Territory of Hawaii. The corpus of the trust created by his deed executed in 1895 was composed solely' of promissory notes of Samuel M. Damon payable to him and aggregating the sum of $800,000.

Counsel for appellee has called to our attention the recognized rule that provisions in a trust deed conferring investment powers should be strictly construed (1 Perry, Trusts [7th ed.], § 460) and that the provisions of a trust instrument are strictly construed against an enlargement of the scope of permissible investments, etc. (1 Restatement, Trusts, § 227), that where there is an inconsistency between a general and a specific provision in a trust deed the latter should prevail (69 C. J., §§ 1157,

1158) and other recognized orthodox rules of construction applicable alike to both trust deeds and wills.

These canons of construction must, however, always give way to the cardinal and paramount rule which requires that the intention of the settlor expressed in his trust documents shall prevail, provided it be consistent with the rules of law. (See *Smith* v. *Bell,* 6 Pet. [U. S.] 68; *Rooke* v. *Queen's Hospital,* 12 Haw. 375; *Fitchie* v. *Brown,* 18 Haw. 52; *Wodehouse* v. *Robinson,* 27 Haw. 462; *Kinney* v. *Robinson,* 30 Haw. 246; *Estate of Mary E. Foster,* 33 Haw. 666; *Estate of Campbell,* 33 Haw. 799; *O'Neil* v. *Dreier,* 61 F. [2d] 598.) Where a trust is created by a transaction *inter vivos* and is evidenced by a written instrument, the terms of the trust are determined by the provisions of the trust instrument in the light of the surrounding facts and circumstances existing at the period of execution and other admissible evidence of the intention of the settlor with respect to the trust. (1 Restatement, Trusts, p. 18.)

In the present case we think that by having recourse to Mr. Bishop's original trust deed and the amendments thereto, including of course the amendment of April 8, 1910, together with the testimony introduced at the trial, and such surrounding facts and circumstances of which the lower court and this court should take judicial notice, little difficulty will be encountered in the determination of the question at issue.

Fifteen years intervened between the execution of the original trust deed and the final amendment. During this entire period Mr. Bishop acted as one of the trustees of the trust estate of his deceased wife, Bernice Pauahi Bishop, who died in the year 1884. The estate of Mrs. Bishop, the largest of its kind in the Hawaiian Islands, was composed almost exclusively of land holdings located in almost every community within this group of islands.

Mr. Bishop must have observed the rapid and continuous enhancement in the value of the lands owned by his wife's estate so that in 1910, and due to this increase, the estate had become one of great wealth. With the knowledge of this fact it would be unreasonable to assume that Mr. Bishop was adverse to real estate investments. In paragraph eleven of the original deed he granted power to his trustees "to sell the whole or any part of the property that may come into their hands hereunder, without any order of Court first had or obtained and without subsequent confirmation by any Court; to reinvest the proceeds as to them shall seem wise * * * to change investments, and in every way deal with said property free from any restraint or limitation."

In the year 1897 Mr. Bishop, by paragraph nine of his amendatory deed, specifically provided that the trustees might use any part of the trust fund "in the care, protection and improvement of any property, real or personal, that may come into their possession under this trust." It must be conceded, therefore, that at that time Mr. Bishop contemplated that his trust estate might become the owner of real property.

In the amendatory deed executed in 1910, by paragraph eleven thereof, Mr. Bishop granted specific power to his trustees to sell the whole or any part of the trust property and to invest the proceeds of sale of the real property, etc. And thus again Mr. Bishop clearly indicated his belief that sooner or later real property would or might come into the trust estate and that his trustees, having the power to acquire, should also be clothed with the power of disposition.

The appellee endeavors to explain these specific provisions in the two separate amendments to the trust deed which referred to the ownership of real estate on the theory that Mr. Bishop "was hoping to take care of every

possible contingency"; that he visualized the possibility that sometime in the future some person desirous of aiding the charitable purposes of his trust might convey real property to the trust by way of gift; or that the trustees might acquire real estate at foreclosure sales to protect investments in securities for the payment of which real estate was conveyed as security. The first contingency, we think, was so remote and improbable as to justify the conclusion that it was never contemplated by Mr. Bishop. The second contingency was of course within the range of possibility but we think if, as argued by appellee, Mr. Bishop was unwilling to empower his trustees to purchase real estate directly, he would for the same reason have been unwilling to repose in his trustees unrestricted power to acquire real property by purchases at foreclosure sales. Much more reasonable, we think, it is to assume that under the broad powers conferred upon the trustees to deal with the trust property "free from any restraint or limitation" Mr. Bishop contemplated the acquisition of real estate by his trustees in the normal and usual manner, namely, by purchase and, being a businessman, it readily occurred to him that should the trustees buy real estate they should also have the power to care for, protect and improve it as well as the power to sell and convey it.

We are cognizant of the general rule recognized in other jurisdictions which prohibits the investment of trust funds in land unless the authority to do so is conferred in the trust document. Counsel for appellant point out that this rule had not been adopted in Hawaii at the time Mr. Bishop executed his final amendatory trust deed in the year 1910 and they argue that the rule is out of harmony with the conditions which existed in Hawaii at that time and which still exist.

These islands are and at all times have been essentially an agrarian community. Their area of available

lands, both rural and urban, is extremely limited. Practically the entire wealth of this community comes from the soil. Land is essentially the pillar supporting practically all local investments. Depreciate the one and the value of the other automatically declines.

It is within the common knowledge of all that, while undoubtedly improvident and ill-advised investments have been made in local real property, the wealth of almost every trust estate in the Territory has been created through wise and provident investments in land. This fact was undoubtedly known to Mr. Bishop in 1910 and it would be to challenge his known business ability and judgment to assume that it was his purpose to bar the right of his trustees to invest in what experience had shown to be the most sound and stable of all property locally available and we believe a reasonable construction of his trust documents, when taken together with the surrounding facts and circumstances, clearly indicates that he did not so intend. Of course every investment of trust funds, regardless of the type of property acquired, must be made with honesty, prudence and fidelity. (See *Brown* v. *Brown,* 22 Haw. 715.)

Our attention has been called to section 4715, R. L. 1935. This statute was enacted some twenty years after the execution of the last of Mr. Bishop's trust documents. It purports to restrict the class of property in which trust funds may be invested. We intend no criticism of the statute, although we may be unable to comprehend the necessity for it. But this statute, when read together with section 6909, was only intended by the legislature to apply in cases where the trust instrument did not otherwise provide. Indeed even the legislature is powerless by subsequent enactment to vary any of the terms of a trust deed previously executed. (See *Campbell* v. *Kawananakoa,* 34 Haw. 333.)

The first paragraph of section eleven of the amendatory deed of 1910 was permissive as distinguished from directory or mandatory. It provides in effect that the trustees shall have the right to invest in securities and then designates a class of foreign securities in which the trustees may invest trust funds. The purpose of this provision, we think, was to clear away any doubt of the right of the trustees to invest in bonds outside of the Territory so long as they are the bonds of any State, Territory, county or municipality of the United States or of any public service corporation organized under the laws of any State or Territory of the United States and operating therein. It probably occurred to Mr. Bishop that without this specific authority the trustees might contravene the rule announced by some courts to the effect that, in the absence of a clear and strong necessity, investments by trustees in securities in another State will not be approved. (*Ormiston* v. *Olcott,* 84 N. Y. 339. See also 3 Bogert, Trusts, § 673.)

We are of the opinion that this amendment to the trust deed was not intended by the settlor to restrict the following paragraph which conferred upon the trustees the power to "in every way deal with the property subject to the trusts free from any restraint or limitation."

The decree appealed from is reversed and the cause is remanded to the court below with directions that the petitioners be advised and instructed that under the terms of the Charles R. Bishop deed of trust, as amended, they are authorized to invest moneys belonging to the trust in improved or other income-producing real estate located within the Territory.

*Robertson, Castle & Anthony* for appellants.

*J. V. Hodgson,* Assistant Attorney General, for appellee.