In the Matter of the Accounting of JOSEPH R. ADOLF et al., as Executors of EDWARD G. ADOLF, Deceased.

Surrogate's Court, Erie County, April 2, 1951.

*Paul F. Klaasesz* for executors, petitioners.

*Samuel Sapowitch,* special guardian.

BUSCAGLIA, S. On the judicial settlement of their accounts as executors the petitioners herein asked for a construction of the last will to determine whether or not they are entitled at this time to one full commission as executors and whether they would also be entitled to receive commissions as trustees. They also request the advice and direction of the court in regard to the investing of funds received from the sale of certain stock which the will had specifically bequeathed and also to determine the method of the payment of capital gains tax on the proceeds of the sale of the said stock.

The decedent's will gives the life use of certain real property to his widow, as well as the income for life on all other real and personal property. Upon her death the residue is disposed of by legacies to relatives, a trust for a nephew and the remainder to certain charitable and religious organizations. Petitioners point out that they have completed their '' usual duties as Executors, namely the payment of debts, the funeral expenses, the payment of State and Federal inheritance taxes, etc.'', and they state, '' from now on the entire estate would be operated in the same manner as a trust, even though the decedent did not refer to the Executors as Trustees except with reference to the trust established for William Weyman in the sum of One Thousand Dollars.''

The executors claim that there is a clear division between the two functions and that that division has now been accomplished and they ask that they be given one full commission for paying and receiving payable to them at this time as executors, plus one receiving commission as trustees and that they be discharged as executors and take up their duties as trustees. It should also be mentioned that at the time of probate letters of trusteeship, as well as letters testamentary, were issued to petitioners.

The court cannot agree with this position. The question of whether or not an executor is entitled to double commissions as an executor and as a trustee depends upon, in the first instance, the intent of the testator. A realistic approach to this inquiry

would lead us to say that most testators have no conscious intention one way or the other as to the question of double commissions, except as stated in *Matter of Jackson* (138 Misc. 167, 170): "It is contrary to human nature for any person to desire to pay a larger sum for a given service when the identical act may be secured for half the amount from the same individual."

While the intent of the testator sufficiently expressed on the subject is of paramount importance, the courts have formulated certain rules as to when double commissions may be paid. These rules are designed to determine when there is such a separateness of functions as to justify and to warrant the payment of both executors' and trustees' commissions. First of all, there must be a trust fund intended by the testator to be severed from the general assets of the estate.

In *Matter of Schliemann* (259 N. Y. 497) the authorities suggest that the executor's duty must have come to an end while the trustee's still continues, e.g., in *McAlpine* v. *Potter* (126 N. Y. 285, 289–290) the court states: "A will must go further than that to admit of double commissions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and require him thereupon to constitute and set up one or more several trusts, to be held and managed as such for the interest of the beneficiary."

(For other discussions of this question, see: *Matter of Gregory*, 150 Misc. 610; *Matter of Glenn*, 231 App. Div. 681, and *Matter of Lite*, 142 Misc. 793.)

Under the will herein the executors will not have fully performed their duties and cannot be discharged until the death of the life beneficiary. At that time they will be called upon to pay certain specific bequests, to set up a trust, and to distribute the residue. Until that time they must, it is true, perform the function of trustees in paying the widow the income for life. Such payment of income has always been held by the authorities to be a proper executorial duty. Turning our attention to the language of the will to find the testator's intention as to the nature of the functions to be performed by the representatives of his estate we find the following, in paragraph third: "The said bequest to my brother, Joseph R. Adolf, is to be also in lieu of Executor's commissions in the event that The Marine Trust Company as Co-Executor claims and is allowed more than one-half of the usual *Executors commissions* for the reason that the majority of the work and keeping of the records would be done by them." (Italics mine.) This would indicate to the court that the decedent anticipated the payment of executors'

commissions for the " work and keeping of records " which would be required during the lifetime of his widow because of the payment of income to her. It should also be pointed out that only in the creation of the trust for a nephew does the decedent give and bequeath any part of his estate to his legal representatives to create a trust and even in that instance he uses the words, " I give and bequeath to my Executors ".

From the language of the will, as well as the above authorities, it follows that the executors are at this time entitled to one half of their commissions as executors; that they will be entitled to the other one half upon the death of the widow and at the final distribution of her estate; and that they will be entitled to commissions as trustees, one half upon the setting up of the trust for the nephew, William Weyman, and the other one half when the principal of that trust is paid to him or returned to the residue of the estate.

Under the terms of the will twenty-seven shares of stock in the Buffalo Insurance Company were specifically bequeathed to three individuals. During the administration of the estate an attractive offer was made by a foreign insurance company to purchase the said stock. The specific legatees directed and authorized the executors to accept the offer and dispose of the stock, which was done. The proceeds from this sale amounted to $14,037.30 and the executors ask for advice and direction as to the manner in which this cash on hand should be invested, pending the termination of the life estate. The court can only say that this money should be invested according to the judgment and discretion of the executors, subject to the pertinent laws of the State of New York.

The executors also ask the question as to who should pay the capital gains tax on the proceeds of the sale of this stock. Since the proceeds of the stock are presently held by the estate for the benefit of the widow, it certainly follows that the tax should be paid by the estate and the executors are so directed and authorized. It should be stated that this decision is in accord with the informal opinion given to the executors' attorney by the Commissioner of Internal Revenue in Washington.

A decree may enter accordingly.